**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOYCE D. JONES,                                              Case No. 1:11-cv-904

        Plaintiff,                                        Dlott, J.
                                                            Bowman, M.J.

        v.


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Joyce D. Jones filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  See 42 U.S.C.  §405(g).  Proceeding through counsel, Plaintiff presents four claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

In April 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning December 31, 2004 due to both mental and physical impairments.  Plaintiff was awarded benefits at the initial level, with a disability onset date determined to be August 20, 2005.  (Tr. 46, 49-55).  That decision was upheld on reconsideration.  (Tr. 47).  Seeking an earlier disability onset date than determined on initial review, Plaintiff requested a hearing de novo before an Administrative Law Judge

("ALJ").  Both in correspondence and at the outset of the September 14, 2010 hearing, ALJ Deborah Smith warned Plaintiff and her attorney that her application would be reviewed in its entirety, and that the prior determination of disability could be set aside. (Tr. 132, 324-325).  At the hearing, the ALJ heard testimony from Plaintiff, and from a vocational expert.  (Tr. 322-362).  On November 15, 2010, not only did Plaintiff fail to succeed in her quest to obtain an earlier disability onset date, but the ALJ denied Plaintiff's application for DIB in its entirety in a written decision.  (Tr. 27-42).

The record on which the ALJ's decision was based reflects that Plaintiff was insured through December 31, 2008, and that she was 58 years old at the expiration of her insured status.  (Tr. 32, 40).  The ALJ found that Plaintiff had the following severe impairments: "obesity, obstructive sleep apnea, chronic obstructive pulmonary disease, arthritis (back, neck, knee) and depression." (Tr. 32).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 34).  Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work, restricted by the following:

> [S]he can lift up to 20 pounds occasionally and 10 pounds frequently, she can stand and/or walk for a total of 6 hours in an 8-hour workday, and she can sit for a total of 6 hours in an 8-hour workday.  She can never climb ladders, ropes or scaffolds or crouch and she can frequently stoop. Mentally, the claimant retains the ability to do routine to complex tasks. She is not significantly limited in understanding and memory; in her ability to do sustained concentration; or in adaptation.  She is moderately limited in social interaction.

(Tr. 35).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was not capable

of performing her highly skilled and stressful past work, as the owner/operator of an ambulance company, overseeing 25-30 employees.  However, the VE testified, and the ALJ found, that Plaintiff had acquired work skills that were transferable to other less stressful sedentary and light jobs, and that a significant number of those jobs existed in the national economy, including such jobs as receptionist and accounting clerk.  (Tr. 40-41).  Thus, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Regulations, and was not entitled to DIB.  (Tr. 41).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal, this Court finds no error and therefore recommends that the Commissioner's decision be affirmed.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

Plaintiff's four assertions of error relate to the third, fourth and fifth steps of the sequential analysis.  Plaintiff argues that the ALJ erred by: (1) erroneously assessing Plaintiff's credibility;  (2) failing to further develop the record concerning Plaintiff's chronic pain; (3) failing to evaluate Plaintiff's impairments in combination, for purposes of determining whether Plaintiff met or equaled a Listing; and (4) rejecting the opinion of Plaintiff's treating physician.

### 1. Credibility/Chronic Pain

The ALJ determined that Plaintiff's complaints of disabling pain were "not credible to the extent they are inconsistent with" the RFC determined by the ALJ.  (Tr. 37).  The ALJ noted that the objective medical evidence "is not consistent with the claimant's subjective allegations," in terms of the severity of her alleged back and joint pain.  (Tr. 37).  After pointing out a number of specific inconsistencies in the medical record, the ALJ concluded that those inconsistencies "such as the claimant's noncompliance and lack of overall treatment history (except for pain complaints and complaints of "depression") and lack of findings on examination and testing all suggest that the claimant's physical and mental impairments are not as severe as alleged."  (Tr. 38).  At several points in her decision, the ALJ reiterated that "all these factors reflect negatively on [Plaintiff's] overall credibility and do not support her allegations of total disability since December 2004."  (Tr. 40).

Without any specific citations to the record, Plaintiff argues that the ALJ erred by negatively assessing her credibility.  Plaintiff argues that "the ALJ is not qualified to determine whether the claimant's ailments are adequate enough to merit her

complaints." (Doc. 9 at 11). Although Plaintiff suggests that the ALJ's credibility assessment ignores the opinions of Plaintiff's treating physicians, Plaintiff fails to point out *any* medical record, or any expert opinion, that the ALJ described inaccurately, or that contradicts the ALJ's assessment.

In a closely related argument, Plaintiff contends that the ALJ erred in discounting the severity of her chronic knee, neck, and back pain, caused by her arthritis. There is no question that pain alone, if the result of a medical impairment, may be severe enough in some cases to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). Upon inquiry by her attorney, Plaintiff testified that she experiences chronic and severe back pain that she would rate as a 5 to 6 on a 10-point scale. (Tr. 350). However, aside from Plaintiff's hearing testimony, no treating or consulting medical source has ever opined that Plaintiff's pain is disabling. Plaintiff accuses the ALJ of failing to develop the record concerning "the question of whether Ms. Jones had pain or not in her knees and back." (Doc. 9 at 12).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

6

1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling pain are not credible.  Contrary to Plaintiff's assertion in this appeal, the ALJ discussed the record at length.  The ALJ began with this brief, accurate, and telling summary:

> The claimant complained of back and neck pain (7F/1) and some arthritis of the knees based on an xray in 2003 (4F/3), MRIs of the claimant's lumbosacral spine revealed some degenerative changes (15F/2, 19F/2); however, there is little else to establish these as a severe impairment, although the state doctor appears to have found them "severe" in combination with the other impairments mentioned above (9F).  In fact, her back pain is rarely included in the claimant's past medical history throughout the record (13F/6, for example) nor is any knee pain.  She also did not have any symptoms on musculoskeletal examination as recently as July 2010 (20F/3) and she has very little treatment history for back complaints and/or knee complaints and they barely make out a severe impairment.  She has not had the regular types of treatment seen in disabling orthopedic problems as will be discussed below.

(Tr. 33).

In other words, while the ALJ recognized some evidence of impairment that would result in pain, she explained that those records reflect only mild abnormalities that do not fully support Plaintiff's complaints that her pain is disabling.  The ALJ discussed the medical evidence in extensive detail.  For example, the ALJ noted that after seeking treatment for her back pain, Plaintiff underwent a battery of objective tests that revealed no specific diagnosis.  (Tr. 37, 258).  In addition, when Plaintiff sought treatment for

other maladies, she often failed to even mention any back or joint pain when relating her medical history.   (Tr. 37, 238, 300). The records reflect that Plaintiff has never undergone or been advised to have surgery, has never been prescribed the use of a cane or other assistive devise, despite allegations that she has difficulty standing and walking, and has never undergone physical therapy or other typical treatment modalities.    (Tr. 37, 332-334).   Plaintiff has received only routine treatment for her COPD, and has never undergone a pulmonary function study.  (Tr. 37).

The ALJ also discussed the numerous occasions on which Plaintiff has failed to comply with prescribed treatment.  (Tr. 37-38).  For example, her prescription for a CPAP machine to treat sleep apnea was discontinued due to Plaintiff's noncompliance. Although her doctors advised Plaintiff to undergo further testing, including a pulmonary function study, a repeat sleep study, and cardiac testing, no records were submitted that indicate Plaintiff followed those recommendations.  Doctors advised Plaintiff (who at 5'3 and 284 pounds is morbidly obese) to diet and exercise, but her weight continued to increase.  (Tr. 38, 274, 302, 310, 312).  Plaintiff drove to Texas in July 2010 against her doctor's warning that she might worsen her underlying condition.  (Tr. 38, 309).  Plaintiff admitted that she has not always taken care of herself (Tr. 337-338), and records reflected that in October 2009, Plaintiff had gone for more than a year without visiting her primary care physician (Tr. 38, 310).  A "lack of treatment" can provide evidence of an "alleviation of [a claimant's] symptoms." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009).

Plaintiff offers only general criticisms of the ALJ's analysis, with no specific references or citations to any record evidence.  Notably, Plaintiff fails to challenge any

of the multiple and detailed reasons offered by the ALJ in support of her credibility determination.

The most specific criticism offered by Plaintiff is a one-sentence argument that the ALJ "completely discounted plaintiff's testimony that she persistently suffered adverse side effects from her medication [Lortab]." (Doc. 9 at 12). However, Plaintiff fails to specify those alleged side effects, or to cite to any testimony in the record that the ALJ allegedly ignored, or to any records at all concerning prescriptions prescribed prior to her last insured date in 2008. This Court's own review of the record finds that Plaintiff testified that her prescription medication and ibuprofen alleviate her pain somewhat, as do periodic nerve block injections. (Tr. 333, 338, 345-346, 350-351).

The ALJ's written opinion includes the following discussion of Plaintiff's use of prescription medication:

> There is a question of the claimant's use of narcotic medication as well. As discussed above, there is no significant evidence of a back impairment prior to the MRI conducted in January 2008. Urinalysis was performed in September 2006, which was negative (14F/21) and as of August 21, 2007, the claimant was not prescribed any narcotics for pain. (*Id*. at 17). There are no records from September 2006 to January 2008 that indicate that the claimant was prescribed narcotic medication for treatment of any physical impairment. Yet, on January 14 and again on January 24, [2008], the claimant reported that Percocet is "the only thing that takes the edge off the pain." (*Id*. at 12, 15). She was denied a prescription of Percocet and appeared "a little upset at this." (*Id.* at 13). Treatment notes dated April 21, 2008 state that the claimant was advised that she would not be getting any narcotics or benzodiazepines. (*Id.* at 3). The claimant's history of prescriptions, or lack thereof, requests and subsequent denials for prescriptions further calls her credibility into question."

(Tr. 38).

Although 20 C.F.R. §404.1529(c) and SSR 96-7p require an ALJ generally to consider a multitude of factors in evaluating pain, in this case there is no evidence that

9

Plaintiff's use of pain medication so limits her activities that it prevents her from all work. There is no legal requirement for an ALJ to discuss every record, so long as the explanation of the factors considered under SSR 96-7 is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(internal quotation marks and footnote omitted).

On the record presented, the ALJ provided a specific and detailed analysis of the factors she considered to evaluate Plaintiff's subjective complaints, including but not limited to the absence of supporting objective and clinical findings - an appropriate factor to consider under SSR 96-7p.  Because the severity of Plaintiff's reported level of pain was not supported either by medical evidence or by the record as a whole, it was proper for the ALJ to discount the credibility of her account.  Given the great deference to an ALJ's credibility assessment, substantial evidence supports the ALJ's decision to discredit Plaintiff's statements about the severity of her symptoms.

### 2. Step 3 Analysis

In addition to criticizing the ALJ's credibility assessment, including the ALJ's assessment of her pain level, Plaintiff argues that the ALJ erred by failing to consider her impairments "in combination" at Step 3 of the sequential process, to determine whether those impairments met or equaled one of the listed impairments in 20 C.F.R. Pt. 404, Sbpt. P, App. 1.  However, the ALJ specifically stated that she was considering all of Plaintiff's impairments both "singly and *in combination*," and concluded that

Plaintiff's "*combination* of impairments" does not meet or equal a Listing.  (Tr. 34, emphasis added).

At Step 3 of the sequential analysis, Plaintiff retains the burden of proving that she met or medically equaled a Listing.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  As with Plaintiff's arguments concerning the ALJ's assessment of Plaintiff's credibility and pain level, Plaintiff's argument concerning the ALJ's Step 3 analysis is vague and general.  She fails to identify any specific Listing that she believes that her impairments met or equaled, nor does she attempt to show specific evidence satisfied any Listing standard.  By contrast, the ALJ's analysis explains that no medical source determined that Plaintiff's impairments met or equaled the criteria of any listing, (Tr. 34), and further details why Plaintiff's impairments fail to show any Listing level impairment, either alone or in combination.  (Tr. 34-35).  The ALJ offers specific analysis of orthopedic Listings 1.02 and 1.04, the chronic pulmonary insufficiency Listing 3.02, and the mental impairment Listing 12.04 as well as the more general criteria set forth in paragraph B of the adult mental disorders listings.  Substantial evidence supports the ALJ's analysis pursuant to Step 3 of the sequential process.

### 3.  Weight Given to Medical Opinion Evidence

Plaintiff's final claim is that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Joseph Justice, DO.  Once again, Plaintiff fails to explain what opinion that the ALJ improperly rejected, and fails to cite to any of Dr. Justice's medical records. The ALJ expressly pointed out that "there are no residual functional capacity (RFC) assessments by any treating source in the record."  (Tr. 39).  "It is well-

11

established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at argumentation, are deemed waived.'"  *Rice v. Comm'r of Soc. Sec.*, 169 Fed. Appx. 452, 454 (6th Cir. 2006).

To the extent that Plaintiff's argument concerning this issue is not deemed waived by any reviewing court, the undersigned finds no error.  Although no treating physician opined concerning Plaintiff's work limitations, the ALJ based her RFC findings upon the medical evidence in the record as a whole, giving "great weight" to the opinion of consulting physician, Dr. Diane Manos, who provided a physical capacity assessment in October 2006.  (Tr. 39, 221-228).  The ALJ additionally gave "[s]ome weight" to the opinion of Dr. Richard Sexton, who completed a consulting psychological evaluation, and gave "great weight" to non-examining state agency psychological consultants.  (Tr. 39).

Having reviewed the record, the Court has been unable to determine what opinion Dr. Joseph provided that arguably should have been given additional weight. In any event, despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  Here, the ALJ sufficiently set forth the reasoning for the weight given to all of the opinions in the record, including the well-supported consulting opinions of Drs. Manos and Sexton.

Finally, the determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(d).  The ALJ acknowledged that Plaintiff was initially found to be disabled as of August 2005 in part based upon her

12

complaints of pain and Dr. Manos's physical RFC.  However, the ALJ explained that when she reviewed the record more thoroughly, and included all of the functional limitations found by Dr. Manos in the hypothetical expressed to the VE, the VE clearly testified that a significant number of jobs existed in the national economy that Plaintiff could still perform.  (Tr. 33).  If an ALJ accurately describes a plaintiff's RFC when formulating a description of limitations to a vocational expert, then the ALJ's conclusion will be supported by substantial evidence.  *See Varley v. Secretary of Health and Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987).

### III.  Conclusion and Recommendation

For the reasons discussed above, I conclude that the ALJ committed no error. Her finding of non-disability is supported by substantial evidence in the record as a whole; therefore, **IT IS RECOMMENDED THAT** the Commissioner's decision to deny Plaintiff DIB benefits be **AFFIRMED**, and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOYCE D. JONES,                                    Case No. 1:11-cv-904

        Plaintiff,                              Dlott, J.
                                                   Bowman, M.J.

    v.


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).